UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

HECTOR FIGUEROA,                    :
                                    :
                Petitioner,         :
                                    :
                                    : 09 Civ. 7225 (PGG) (THK)
                                    :
        -against-                   :
                                    : **REPORT AND RECOMMENDATION**
ROBERT ERCOLE,                      :
                                    :
                Respondent.         :
------------------------------------X

**TO: HON. PAUL G. GARDEPHE, United States District Judge.**
**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

This habeas corpus proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(d) of the Local Civil Rules of the Southern District of New York.

Petitioner Hector Figueroa was convicted after a jury trial in New York Supreme Court, Bronx County, of Criminal Possession of a Controlled Substance in the First Degree (New York Penal Law § 220.21(1)), and was sentenced to an indeterminate term of from twenty-three years to life imprisonment. Petitioner is presently incarcerated at Green Haven Correctional Facility in Stormville, New York.

Petitioner seeks habeas relief under 28 U.S.C. § 2254, claiming (1) ineffective assistance of trial counsel, and (2) the trial court violated Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986) ("Batson"). (See Petitioner's Addendum ("Pet'r

COPIES MAILED
TO COUNSEL OF RECORD ON 10/21/10

Addendum"), at 1.).  Respondent contends that Petitioner cannot prevail on federal habeas review because the New York courts' determinations that Petitioner's constitutional rights were not violated were objectively reasonable applications of clearly established federal law. (See Respondent's Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus, dated March 8, 2010 ("Resp't Mem."), at 3.)

For the reasons that follow, this Court concludes that Petitioner is not entitled to habeas relief and recommends that the Petition be dismissed with prejudice.

**BACKGROUND**

I.   <u>Voir Dire</u>

Petitioner raises claims pertaining to the prosecution's exercise of peremptory challenges against three venire-persons: Pablo Medrano ("Medrano"), Heddie Rodriguez ("Rodriguez"), and Nelliette Colon ("Colon").

Following the third round of jury selection, after the prosecutor raised a <u>Batson</u> challenge to the defense's exercise of peremptory challenges to white jurors, defense counsel raised a challenge pursuant to <u>Batson</u> based on the prosecution's peremptory strikes of several Hispanic jurors, specifically alleging that the prosecutor "knocked out every young Hispanic starting with Mr. Medrano, Mr. Heddie Rodriguez, Miss Colon now." (Transcript of

2

<u>Voir</u> <u>Dire</u>, dated April 3-10, 2002 ("V."), at 520.)   The court required the prosecution to provide race-neutral explanations for striking the challenged jurors. (V. at 521.)   The prosecution did so with respect to jurors Vega (<u>see</u> <u>id</u>. at 521-22), Lopez (<u>see</u> <u>id</u>. at 522), Berrios (<u>see</u> <u>id</u>. at 522-23), and Colon (<u>see</u> <u>id</u>. at 523). The prosecutor did not, however, provide any explanation for her strikes of prospective jurors Medrano and Rodriguez, and that omission was not brought to the court's attention.

The court denied defense counsel's <u>Batson</u> application in its totality, stating that "[Petitioner's] whole <u>Batson</u> application is denied right across the board." (V. at 525.)   The court did not explicitly articulate its factual findings with respect to any of Petitioner's <u>Batson</u> challenges.

Petitioner has made no record of the ethnic makeup of the sworn jury, (<u>see</u> Pet'r Addendum and Reply Memorandum of Law in Further Support of Petitioner's Habeas Corpus Petition, dated April 26, 2010 ("Pet'r Reply Mem.")), but argues that his rights under <u>Batson</u> were violated.

Petitioner also contends that defense counsel failed to move to strike a biased juror — Maria Deborja ("Deborja").   A key area of inquiry in his co-defendant's counsel's questioning of Deborja was whether she would be able to hold the prosecution to its burden of proof.   Deborja initially responded affirmatively when asked if

3

she could follow the court's instructions on holding the State to its burden of proof. (See id. at 270.) Later in the voir dire, however, when questioned as to how she would decide the case if the prosecution failed to prove Petitioner's guilt beyond a reasonable doubt, Deborja responded that she would find Figueroa, "guilty." (Id. at 283.) When questioned a second time, she affirmed her answer that she would, indeed, find Petitioner guilty. (See id.) After asking the same question of two other prospective jurors, who both responded, "Not Guilty," counsel for co-defendant, again, asked Deborja whether she understood that the State "has the burden to prove the charges beyond a reasonable doubt" and that if the State does not do so, Petitioner is to be "presumed innocent." To this more simply-worded, clarifying question, Deborja answered, "Yes." (Id. at 283-84.)

## II. Evidence Adduced at Trial

On December 8, 2000, at about 3:40 a.m., Police Officers John Polchinski ("Polchinski") and Kristy Schmidt ("Schmidt") were patrolling in an unmarked police car in the Kingsbridge neighborhood of the Bronx. (See Trial Transcript, dated April 3-24, 2002 ("Tr."), at 629, 926-27.) As they drove south on Fort Independent Avenue, Polchinski noticed a livery cab about 300 yards in front of him cresting a hill. (See id. at 630, 667, 733-34, 737.) The cab grabbed his attention, because it crossed over the

4

double yellow line around a turn and then crossed back into the right lane. (See id. at 630, 667, 736-37.) The cab turned right onto Sedgwick Avenue without signaling and at a high speed. (See id. at 631, 667-68, 747, 928-29, 955.) As Polchinski tried to catch up to the vehicle, the livery cab made a left turn without signaling, onto Reservoir Avenue. (See id. at 631, 668, 954-55.) At that point, Polchinski could see that the cab had two passengers in the back seat. (See id. at 747-48.)

Polchinski signaled for the cab to pull over at the intersection of Reservoir and Claflin Avenues. (See id. at 631-32, 928, 955-56.) Polchinski pulled up behind the cab, and he and Schmidt got out of their car and walked over to the cab. (See id. at 633, 695-96, 956, 958-59.) Polchinski approached the driver and stood just behind the driver's door. (See id. at 633, 636, 695, 932-33, 989.) The driver rolled down his window. (See id. at 633.) Polchinski asked for his license and registration. (See id. at 636, 698.)

As the driver looked through his wallet, Polchinski saw the passenger behind the driver's seat, Petitioner, making kicking movements with his left foot. (See id. at 636, 712, 754-55, 760, 783.) Fearful for his personal safety, Polchinski opened the door and asked Petitioner and the other passenger, Jose Caba ("Caba"), to step out of the car. (See id. at 634, 784, 810.) At the same

5

time, Schmidt, who was standing by the rear passenger-side door, noticed Petitioner picking up his left leg and putting it on top of a plastic bag or kicking it at an angle. (See id. at 930, 947, 962, 996.)  It appeared to her as if he was attempting to hide the bag, but he did not use his hand to grab at or otherwise try to pick up the bag. (See id. at 930, 996.)  Caba and Petitioner exited the car without incident. (See id. at 634, 932, 964.)

When Polchinski opened the car door, he saw a plastic bag on the floor behind the driver's seat. (See id. at 640, 711, 788.) Schmidt entered the cab and, shining her flashlight behind the driver's seat, saw an open, triple-bagged shopping bag full of brick-shapes wrapped in yellow paper. (See id. at 933, 946-47, 950-51, 972.)  She noticed that one of the bricks sticking out of the bag was torn, revealing tiny glassine envelopes. (See id. at 933.) She stepped back and handcuffed Caba. (See id. at 934.) Polchinski followed suit and placed Petitioner in handcuffs. (See id. at 639, 795, 934.) The cab was not searched further. (See id. at 984.) Neither Polchinski nor Schmidt looked at, or asked for, the license, registration, or insurance of the actual driver of the livery cab, nor did either officer search the driver, or ask him to step out of the car. (See id. at 699-700, 963, 997.)  Schmidt allowed the driver to drive away, because she was aware that the law concerning contraband found in a cab gave her discretion to

release him. (See id. at 967, 969-70.)

The contraband was sent to the New York City Police Department Laboratory, where it was tested by police chemist, Radha Kalra, who determined that the seized contraband — 4,548 glassine envelopes stamped either Drama, Scarface, or Rhumba — contained approximately 6 3/8 ounces of heroin. (See id. at 582-83, 591, 593-94, 613.) Detective Ronald Kennedy ("Kennedy") testified that a glassine of heroin cost $10 on December 8, 2008, implying that the street value of the heroin seized by Officers Polchinski and Schmidt was worth approximately $45,000 at the time. (See id. at 839-40.)   Kennedy further testified that the number of glassines and the nature of the stamps strongly suggested future retail distribution. (See id. at 840-41.)   Kennedy also stated that couriers sometimes used livery cabs to avoid vehicle forfeiture.  (See id. at 831-33.) Although Kennedy had not personally arrested a cab driver for transporting drugs, he agreed that it was possible that a cab driver would use his own cab to transport drugs. (See id. at 850-52.)

At trial, the defense summations relied heavily on whether the driver actually possessed the narcotics.   Petitioner's counsel argued that the bag of narcotics most likely belonged to the cab driver, and that the driver, knowing of the automobile presumption, might well use his own cab to transport narcotics, and pick up

7

fares to distract attention from himself if he felt the police were watching.  (See id. at 1152-53, 1171, 1173.)  During her summation, the prosecutor offered her own take on the driver, arguing that the driver must not have known about the drugs, because otherwise why would he have "driv[en] like a complete moron" or have picked up a fare in the first place.  (See id. at 1189, 1200.)

The court instructed the jury on the car presumption as follows:

> Under our law, the presence of a controlled substance in an automobile is presumptive evidence of knowing possession of that substance by each and every person in that automobile at the time the controlled substance was found.  Except that such presumption does not apply to a duly licensed operator of an automobile who is at the time operating it for hire in the lawful and proper pursuit of his [or her] trade.

(Id. at 1227.)

Petitioner was convicted of Criminal Possession of a Controlled Substance in the First Degree, N.Y. Penal Law § 220.21(1), and was sentenced to an indeterminate prison term of twenty-three years to life.

III. Post-Trial Proceedings

Petitioner, represented by counsel, raised four issues on direct appeal: (1) his right to a jury trial was unconstitutionally infringed when the remaining eleven jurors continuing deliberating after one juror left to be interviewed by the court; (2) the court's failure to give a missing witness charge deprived him of

8

due process; (3) a police chemist's unfounded testimony deprived him of due process; and (4) the sentence imposed was harsh and excessive.   (See Brief for Defendant-Appellant to the New York State Supreme Court Appellate Division, First Department, dated January 2005 ("App. Br."), attached as Ex. 1 to Appendix in Answer to Petition ("Resp't Appx.").)  In a pro se supplemental brief, Petitioner raised three additional issues: (1) the prosecution's pretextual peremptory strikes violated his right to equal protection of the law; (2) he was deprived of the effective assistance of counsel in connection with his attorney's handling of several Batson issues; and (3) the lower court's failure to articulate its factual findings at the third step of the Batson protocol mandated reversal.  (See Supplemental Brief for Defendant-Appellant to the New York State Supreme Court Appellate Division, First Department, dated June 2005 ("Supp. App. Br."), attached as Ex. 2 to Resp't Appx.)   On November 22, 2005, the Appellate Division, First Department, affirmed Petitioner's conviction.  See People v. Figueroa, 21 A.D.3d 337, 800 N.Y.S.2d 673 (1st Dep't 2005).  Petitioner sought leave to appeal on each of the issues raised on direct appeal (with the exception of his challenge to the harshness and excessiveness of his sentence) to the New York Court of Appeals.  Leave was denied on December 8, 2005.  See People v. Figueroa, 6 N.Y.3d 753, 810 N.Y.S.2d 421 (2005).

9

In the instant Petition, Petitioner seeks habeas relief on two grounds: (1) ineffective assistance of trial counsel, and (2) the trial court's violation of <u>Batson</u> during jury selection.   (<u>See</u> Pet'r Addendum at 1.)   In his opposition, Respondent concedes that the Petition is timely and that, with respect to Petitioner's <u>Batson</u> and ineffective assistance of counsel claims, Petitioner has exhausted his state court remedies.   (<u>See</u> Resp't Mem. at 3.)

**DISCUSSION**

I.   <u>Standard of Review</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v.</u>

10

<u>Taylor</u>, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); <u>accord</u>
<u>Leslie v. Artuz</u>, 230 F.3d 25, 32 (2d Cir. 2000).  The phrase,
"clearly established Federal law, as determined by the Supreme
Court of the United States," means the "holdings as opposed to the
dicta of the [Supreme Court's] decisions as of the time of the
relevant state-court decision." <u>Id.</u> at 412, 120 S. Ct. at 1523; <u>see</u>
<u>also</u> <u>Loliscio v. Goord</u>, 263 F.3d 178, 184 (2d Cir. 2001).

A state court decision is based on an "unreasonable
application" of Supreme Court precedent if it correctly identified
the governing legal rule, but applied it in an unreasonable manner
to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413, 120
S. Ct. at 1523.  The inquiry for a federal habeas court is not
whether the state court's application of the governing law was
erroneous or incorrect, but, rather, whether it was "objectively
unreasonable." <u>See</u> <u>id.</u> at 408-10, 120 S. Ct. at 1521-22; <u>see also</u>
<u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal
habeas court is not empowered to grant the writ just because, in
its independent judgment, it would have decided the federal law
question differently.  The state court's application must reflect
some additional increment of incorrectness such that it may be said
to be unreasonable."); <u>Lurie v. Wittner</u>, 228 F.3d 113, 128-29 (2d
Cir. 2000) (same). However, the Second Circuit has explained that
while "some increment of incorrectness beyond error is required...

the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003). "A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

II. Batson Claim

Petitioner claims that the trial court violated the Batson juror challenge protocol in failing to explicitly articulate its factual findings at the third step of that protocol. (See Pet'r Addendum at 6-8.) Respondent contends that Batson does not require

12

the court to articulate its factual findings during the third step; rather it requires that the defense be afforded the opportunity to argue, given that the ultimate burden of persuasion at step three rests on the defendant to prove that the race-neutral reasons offered by the prosecution for challenging a potential juror were mere pretext for discrimination. (See Resp't Mem. at 12.) The Court agrees with Respondent.

A. Legal Standard

The Supreme Court has established a three-step analysis to evaluate claims that the prosecution exercised its peremptory challenges in violation of the Equal Protection Clause. See Batson, 476 U.S. at 96, 106 S. Ct. at 1723; McKinney v. Artuz, 326 F.3d 87, 97 (2d Cir. 2003). First, the defendant must make a prima facie showing that the prosecutor excluded jurors on the basis of a protected classification such as race. See Batson, 476 U.S. at 96-97, 106 S. Ct. at 1723; McKinney, 326 F.3d at 97. Second, if the defendant makes such a showing, the prosecution bears the burden of providing a facially race-neutral explanation for its peremptory challenges. Third, if the prosecution satisfies its burden, the defendant must establish, by a preponderance of the evidence, that the prosecution's race-neutral explanation was merely pretextual, and that the challenges were actually motivated by purposeful discrimination. See Hernandez v. New York, 500 U.S.

13

352, 363, 111 S. Ct. 1859, 1868 (1991); <u>Batson</u>, 476 U.S. at 98, 106 S. Ct. at 1724; <u>McKinney</u>, 326 F.3d at 98.

For the second step of a <u>Batson</u> analysis, the prosecutor's race-neutral explanation need not be "persuasive, or even plausible." <u>Purkett v. Elem</u>, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1771 (1995) (per curiam); <u>accord</u> <u>McKinney</u>, 326 F.3d at 98. "It is not until the third step that the persuasiveness of the justification becomes relevant – the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." <u>Purkett</u>, 514 U.S. at 768, 115 S. Ct. at 1771; <u>accord</u> <u>Miller-El</u>, 537 U.S. at 338-39, 123 S. Ct. at 1040. The most relevant factors for the trial court in making this determination are usually the prosecutor's demeanor and credibility. <u>See</u> <u>McKinney</u>, 326 F.3d at 98. A trial court's <u>Batson</u> analysis is based on the totality of the circumstances. <u>See</u> <u>Galarza v. Keane</u>, 252 F.3d 630, 636 (2d Cir. 2001).

A trial court's finding that a peremptory challenge is non-discriminatory is a factual determination, and is, thus, entitled to a presumption of correctness on habeas review, which a petitioner may only rebut by clear and convincing evidence. <u>See</u> <u>McKinney</u>, 326 F.3d at 101 (citing 28 U.S.C. § 2254(e)(1)). Deference to the trial court is especially appropriate for <u>Batson</u> claims, because they ultimately depend upon credibility

.

14

determinations, which lie "peculiarly within a trial judge's province." McKinney, 326 F.3d at 98 (quoting Hernandez, 500 U.S. at 365, 111 S. Ct. at 1869); see also Miller-El, 537 U.S. at 339, 123 S. Ct. at 1041 ("Deference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court to make credibility determinations."). But see Miller-El, 537 U.S. at 340, 123 S. Ct. at 1041 ("Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and . . . conclude that the factual premise was incorrect by clear and convincing evidence.").

   B. Application of the Law to the Facts

   Petitioner contends that the trial court's substantive Batson violation — the court's failure to articulate its factual findings at step three of the Batson protocol — clearly violated established Supreme Court precedent. (See Pet'r Addendum at 6.) However, contrary to Petitioner's contention, Batson does not compel the court to articulate detailed factual findings during the third step of its analysis. See Miller-El, 537 U.S. at 347, 123 S. Ct. at 1045 (holding that a "state court need not make detailed findings addressing all the evidence before it" where ruling on a Batson motion); McKinney, 326 F.3d at 100 ("Although reviewing courts might have preferred the trial court to provide express reasons for

15

each credibility determination, no clearly established federal law required the trial court to do so.").

Federal law does not require a "talismanic recitation of specific words in order to satisfy Batson." Galarza, 252 F.3d at 640 n.10 (holding that although a trial judge must make rulings on each challenged strike, a general cumulative ruling or clear rejection of each claim is sufficient to constitute an adequate Batson determination); see also DeBerry v. Portuondo, 277 F. Supp. 2d 150, 159-60 (S.D.N.Y. 2003) ("Although a trial judge must reach step three of Batson, no controlling Supreme Court precedent requires the trial judge's adjudication to take any particular form or include any 'magic words.'"), aff'd, 403 F.3d 57 (2d Cir. 2005). Indeed, under certain circumstances, federal law does not even require that the credibility adjudication be rendered in explicit form. See Hernandez, 500 U.S. at 357 n.2, 111 S. Ct. at 1865 (noting that "[t]he trial judge appears to have accepted the prosecutors reasoning as to his motivation" and subsequently holding that the trial judge "chose to believe the prosecutor's race-neutral explanation," which "represents a finding of fact") (emphasis added); Dobbin v. Greiner, 249 F. Supp. 2d 241, 252-53 (S.D.N.Y. 2002) (reading Hernandez to suggest that an implicit credibility determination is sufficient); cf. Dolphy v. Mantello, 552 F.3d 236, 239 (2d Cir. 2009) (requiring a clear credibility

16

determination where explanation proffered by prosecution "lends itself to pretext," in a case where the prosecution had posited an intuited correlation between body fat and sympathy for persons accused of crimes).

Rather, the third step of <u>Batson</u> requires only that, once the defense is given an opportunity to argue why the race-neutral reasons proffered by the prosecutor were mere pretext for discrimination, the court make a determination as to whether the defense has met its burden of proof. <u>See</u> <u>Messiah v. Duncan</u>, 435 F.3d 186, 198 (2d Cir. 2006) ("As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his <u>Batson</u> ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a <u>Batson</u> challenge.").

Here, in stating that "[Petitioner's] whole <u>Batson</u> application is denied right across the board," the trial court obviously credited the reasons proffered by the prosecutor for her peremptory challenges as not pretextual. (V. at 525.)  Moreover, in asking defense counsel, "Do either one of you want to state why you think [the prosecutor] is giving pretextual reason," in response to the prosecutor's explanation as to why the strikes were race-neutral, the trial judge gave Petitioner's counsel sufficient opportunity to make a record with respect to his <u>Batson</u> challenges. (V. at 523.)

17

We cannot say, therefore, that the trial court failed to meet its obligations with respect to step three of <u>Batson</u>.  The trial court followed the requirements of <u>Batson</u> in making an express determination that the defense's <u>Batson</u> motion lacked merit, and in allowing the defense an opportunity to make a record; the Appellate Division affirmed the judgment; and that affirmation was not contrary to, or an unreasonable application of, federal law.

Accordingly, this Court recommends that Petitioner's <u>Batson</u> claim be dismissed.

## III.   <u>Ineffective Assistance of Counsel Claims</u>

Petitioner contends that his trial counsel was ineffective in (1) failing to require the prosecution to give a race-neutral explanation for its peremptory strikes of two Latino jurors; (2) failing to articulate a factual and legal basis demonstrating that the prosecution's preemptory challenge of another Latino juror was pretextual; (3) failing to strike an allegedly biased juror; and (4) failing to request that the court comply with step three of the <u>Batson</u> protocol by explicitly articulating its factual findings. (<u>See</u> Pet'r Addendum at 7.)  Respondent replies that Petitioner cannot prevail on federal habeas review because, in rejecting his claims, the State courts reasonably applied clearly established Supreme Court law.

18

A.  Applicable Legal Standard

Claims of ineffective assistance of counsel are evaluated under a two-pronged test. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Aparicio, 269 F.3d at 95. First, the petitioner must establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064; accord Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004). In evaluating the reasonableness requirement, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689, 104 S. Ct. at 2065 (citation and internal quotation marks omitted). The Second Circuit has defined a "strategic decision" as a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox, 387 F.3d at 198 (quoting Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001)). A court must not use "perfect hindsight to criticize unsuccessful . . . strategies." Eze v. Senkowski, 321 F.3d 110, 132 (2d Cir. 2003); see Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Cox, 387 F.3d at 198.

Second, a petitioner must demonstrate that there is a

19

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Flores v. Demskie, 215 F.3d 293, 300 (2d Cir. 2000). "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Cox, 387 F.3d at 199 ("The level of prejudice [a petitioner] need demonstrate lies between prejudice that had 'some conceivable effect' and prejudice that more likely than not altered the outcome in the case."). A court must review the prejudicial effect of counsel's errors in the aggregate. See Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700, 104 S. Ct. at 2071.

For the purposes of AEDPA, it is well settled that the Strickland standard constitutes the relevant "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Aparicio, 269 F.3d at 95 & n.8; Sellan, 261 F.3d at 315. Thus, on habeas review, the question before the court is not whether, as a de novo matter, it finds counsel to have been effective or ineffective; rather, the relevant question is whether the state court decision addressing the issue

involved an "unreasonable application" of the <u>Strickland</u> standard to the facts of the petitioner's case. <u>See</u> <u>Sellan</u>, 261 F.3d at 314-15 & n.6.   Unreasonable in this context means "objectively unreasonable," <u>Williams</u>, 529 U.S. at 409, 120 S. Ct. at 1495, and involves "some increment of incorrectness beyond error." <u>Sellan</u>, 261 F.3d at 315 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)); <u>accord</u> <u>Mance v. Miller</u>, No. 01 Civ. 5243 (JSM), 2002 WL 377533, at *5 (S.D.N.Y. Mar. 8, 2002).

B.   <u>Application of the Law to the Facts</u>

Petitioner contends that his attorney: (1) failed to hold the prosecution to its obligation of articulating race-neutral explanations for its peremptory strikes of jurors Medrano and Rodriguez; (2) failed, when called upon by the court, to articulate the factual and legal basis demonstrating the prosecution's peremptory strike of juror Colon was pretextual; (3) failed to move to strike juror Deborja, whose testimony gave the impression that she would convict Petitioner even if the prosecution failed to prove his guilt; and, finally, (4) failed to request that the court comply with step three of the <u>Batson</u> protocol by explicitly articulating its factual findings at step three of that protocol. The Court will address each of these claims in turn.

Petitioner contends that defense counsel blundered, not because he failed to require the prosecution to articulate race-

neutral explanations for its challenged strikes, but, rather, because he neglected to object when the prosecutor, after providing race-neutral explanations for her strikes of four other jurors, did not provide an explanation with respect to two of her initial four strikes, namely, with respect to jurors Medrano and Rodriguez. (See Pet'r Addendum at 1.)  Petitioner argues that because defense counsel failed to demand that the prosecution give a race-neutral explanation for challenging these two jurors — instead, choosing to remain silent — he effectively waived what could have been, at best, a Batson violation, at worst, a reversible error for appeal.

　　1.　Juror Rodriguez

Petitioner's claim with respect to one of the jurors — juror Rodriguez — is factually incorrect.  The record indicates that Rodriguez was relieved of his duty to serve as a juror, not as a result of a peremptory strike by the prosecution but, rather, for cause.  Specifically, in connection with individual questioning of some of the prospective jurors regarding hardships or concerns or other such problems that they might have with the case, prospective juror Rodriguez described an unpleasant incident with the police in which he was involved.  This incident led him to have the following to say about his ability to be impartial in Petitioner's case: "I don't have any likings toward any of the cops or systems.  I don't care what any cops have to say against these gentlemen here."  (V.

22

at 366.)  In response to a specific and direct question by counsel for Petitioner's co-defendant, as to whether he could be impartial, Rodriguez replied as follows, "I can't take any cop's word for anything.  I have no trust in the system at all."  (Id.)

Rodriguez was subsequently dismissed.  Neither party objected. Accordingly, there is no basis for Petitioner to now assert that defense counsel's failure to demand a race-neutral explanation for the "strike" constitutes ineffective assistance of counsel.  There was no peremptory strike, and, as such, there is no factual basis upon which to ground this particular claim.

### 2.  Juror Medrano

Unlike Rodriguez, Medrano was, in fact, struck by use of one of the prosecutor's peremptory challenges.  (See V. at 208.)  It is clear from the record that no specific race-neutral explanation was provided with respect to Medrano.  Whether or not defense counsel's failure to point out this omission qualifies as ineffective assistance of counsel requires a two-step analysis under Strickland.

### a.  Was Petitioner's Attorney's Performance Unreasonably Deficient?

As the Second Circuit has made clear, the ultimate burden of persuasion regarding racial motivation in the context of a Batson challenge "rests with, and never shifts from, the opponent of the

23

strike." <u>Garraway</u>, 591 F.3d at 76 (quoting <u>Purkett v. Elem</u>, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (1995)); <u>see also</u> <u>Johnson v. California</u>, 545 U.S. 162, 171-72, 125 S. Ct. 2410, 2418 (2005) (holding that even where the prosecutor declines to respond to a trial judge's inquiry, a trial court should not treat the <u>Batson</u> challenge as presumptively correct). The burden remains on defense counsel to "press the objection" as to the challenged juror where it appears that the challenge to her strike might "slip through the cracks." <u>Garraway</u>, 591 F.3d at 76. Here, defense counsel failed to do so following what appears to be an inadvertent omission by the prosecutor, who indicated that she was attempting to "just go[] through [all of the challenged first-round strikes]." (V. at 522.) In asking defense counsel whether they intended to challenge as pretextual the reasons for the strikes proffered by the prosecution, the trial court also overlooked the omitted explanation for juror Medrano. (<u>See</u> V. at 523.)

Defense counsel's failure to pursue his <u>Batson</u> challenge with respect to Medrano, rather than being inadvertent, may have been based on a realistic assessment that it would not succeed; indeed, there is little doubt that, had an objection been lodged, the prosecutor would have proffered a race-neutral explanation for why she struck Medrano.

Medrano, for instance, stated that his brother had been

"arrested with a couple of other people" for possession of a firearm and that, "he got parole." (V. at 116-17.)  While he did admit that he felt as if his brother had been treated fairly by the criminal justice system, and affirmed that he believed that he could be a fair juror in this case, the mere fact that his brother was still on probation at the time of the trial (see id. at 117), would have qualified as a sufficient race-neutral explanation for the strike.  Cf. Jordan v. Lefevre, 293 F.3d 587, 594 (2d Cir. 2002) (holding that it was not impermissible for the district court to have credited prosecutor's explanation that he viewed the struck juror as potentially having animosity toward the police because of the juror's view that the police had unfairly arrested his brother).

Furthermore, during voir dire, Medrano stated that he worked at Pet Boys Auto Parts Store.  (See V. at 142.)  This fact is noteworthy because the issue of whether or not the space in between the driver-side seat and the floor of the livery cab, in which Petitioner was riding at the time of his arrest, was large enough for the seized contraband to have been passed through, was an important factual issue at trial.  Thus, the prospective jurors were asked whether they had ever been to the "auto show in Manhattan," and if so, "how long ago." (V. at 201.)  While certainly not dispositive of his ability to be impartial, that

Medrano worked full-time at an auto parts store was surely sufficiently important as to have raised doubts in the prosecutor's mind as to whether or not Medrano could resolve a factual issue with respect to the livery cab based solely on the evidence presented at trial.

Thus, aware that an objection to the prosecutor's inadvertent omission would likely have resulted in the prosecutor articulating one of several possible race-neutral explanations that could not be disputed, the decision by Petitioner's attorney not to object to the prosecutor's failure to provide an explanation might very well have then represented a reasonable assessment of the merits of pursuing such an objection.

Nevertheless, even assuming for the moment that it was objectively unreasonable for defense counsel not to have required the prosecution to provide a race-neutral explanation for its peremptory challenge of Medrano, Petitioner cannot succeed on this claim, because he cannot satisfy the second prong of the Strickland test.

> b.  Was Petitioner Sufficiently Prejudiced by Defense Counsel's Behavior?

Petitioner fails to articulate how he has satisfied the second prong of Strickland.  The issue is ignored entirely in Petitioner's original submission to this Court.  In his reply brief, Petitioner

26

addresses the issue only by suggesting that if his attorney had objected, the issue would have been preserved for review by the Appellate Division.[1] (See Pet'r Reply Mem. at 7.)  This misses the point.  The question that must be considered in assessing prejudice under Strickland is whether, had defense counsel pointed out the failure to give an explanation for the challenge of Medrano, the trial court would have found a Batson violation — either because the prosecution would have failed to give a race-neutral explanation, or, alternatively, because the trial court would have rejected the explanation given as pretextual.

The Appellate Division rejected Petitioner's ineffective assistance claim on the merits.  See People v. Figueroa, 23 A.D.3d 291, 293, 808 N.Y.S.2d 13, 14 (2005) ("The record establishes that each defendant received effective assistance under the state and

---

[1]At the time of the April 2002 jury selection in Petitioner's case, pending before the New York Court of Appeals were two First Department cases regarding the extent to which a defendant is obliged, when raising a Batson motion, to specifically identify the particular jurors being challenged. See People v. James, 282 A.D.2d 264, 724 N.Y.S.2d 31 (1st Dep't 2001), lv. granted, 96 N.Y.2d 879 (2001) and People v. Jones, 284 A.D.2d 46, 728 N.Y.S.2d 417 (1st Dep't 2001), lv. granted, 97 N.Y.2d 641 (2001).  The New York Court of Appeals eventually held that, as a matter of state law, it is incumbent upon the defense to make clear which strikes it is challenging and to which race-neutral explanations it continues to object.  See People v. James, 99 N.Y.2d 264, 272 (2002); cf. Garraway v. Phillips, 591 F.3d 72, 76 (2d Cir. 2010) ("We hold that, by failing to advise the prosecutor or the court that explanations were offered as to fewer than all of several challenged strikes, the defendant has forfeited his Batson claim.").

federal standards (see <u>People v. Benevento</u>, 91 N.Y.2d 708, 713-14 (1998); see also <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)).")". There is no basis to conclude that the Appellate Division's decision was an unreasonable application of <u>Strickland</u>.  Indeed, Petitioner's argument fails for a number of reasons.

Having addressed the prejudice prong in his <u>pro se</u> supplemental brief to the Appellate Division, Petitioner cited exclusively to a Third Circuit case, <u>Government of Virgin Islands v. Forte</u>, 865 F.2d 59, 65 (3d Cir. 1989).  Reliance on that case, however, is misplaced.  In <u>Forte</u>, virtually all of the white jurors were stricken by the prosecutor, and there was no <u>Batson</u> objection lodged at all — notwithstanding the defendant's having urged his counsel to lodge such an objection.  At the time of the <u>Forte</u> trial, the <u>Batson</u> case was pending before the Supreme Court and the Third Circuit found it unreasonable for counsel to have ignored an obvious pattern of racial strikes and his client's request to lodge an objection.  The <u>Batson</u> claim was, therefore, not preserved for appeal.  The Third Circuit concluded that the Petitioner had succeeded on an ineffective assistance claim, because it was apparent that, had an objection been lodged, the trial court would have rejected it, because the court and defense counsel labored under the misconception that <u>Batson</u> did not apply with equal force to the striking of white jurors.  And, had the issue been

28

preserved, there was little doubt that the appellate court would have remanded in light of <u>Batson</u>, for an explanation for all of the challenges; finally, given the obvious pattern of racial challenges, it could not be predicted whether a new trial would be required.

In the instant case, Petitioner's counsel did lodge a <u>Batson</u> objection, did object to some of the explanations offered for the prosecutor's challenges, and simply failed to note that an explanation, had not been given for one of the challenges.  Had he done so, there is no doubt that the court would have required an explanation, and little doubt that the prosecutor would have offered a facially race-neutral explanation for the Medrano challenge, as she did for the other jurors.  Moreover, there is no reason to believe that the trial court would have dismissed that explanation as pretextual.  Defense counsel objected to other race-neutral explanations of peremptory challenges that were, arguably, less persuasive — or even plausible.  (<u>See, e.g.</u>, discussion of Juror Colon, <u>infra</u> at 31-34.)  Even in these situations, the trial court accepted the explanation proffered by the prosecution as not pretextual and concluded that Petitioner's entire <u>Batson</u> motion had no merit.

Furthermore, unlike in <u>Forte</u>, where there was ample evidence that the prosecutor purposefully excluded jurors on the basis of

race, it is not clear here whether defense counsel succeeded in even establishing a prima facie case of discrimination with respect to the prosecutor's peremptory challenges. Batson prohibits the use of peremptory challenges in a manner that would violate the Equal Protection Clause of the Fourteenth Amendment — challenges based on race or gender. Age, by contrast, is "not a suspect classification under the Equal Protection Clause." Gregory v. Ashcroft, 501 U.S. 452, 470 111 S. Ct. 2395, 2406 (1991); cf. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 86, 120 S. Ct. 631, 647 (2000) (holding that lines drawn on the basis of age are subject only to rational basis review). Age, therefore, is not a juror trait upon which a Batson claim can be premised. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 143, 114 S. Ct. 1419, 1429 (1994) (stating that "[p]arties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review").

Petitioner's Batson challenge at trial described the excluded class as "young" Hispanics. (V. at 520.) "I'm going to make it a subjective test that I have but all these individuals were all under thirty, all Hispanic, and been knocked out consistently by [the prosecutor]." (Id. at 521.) In providing race-neutral explanations as to the challenged strikes, the record is clear that the prosecutor also understood the challenged class to be young

30

Hispanics: "Miss Deborja and Mr. Cora under forty... both on the jury now. I obviously did not strike them. Mr. Portu, I did not strike, he was also under forty." (Id. at 521.) Similarly, a few lines later in the voir dire, she stated, in response to the same Batson challenge, "[O]bviously I left on young Hispanic, Miss Cabeza." (Id. at 522.)

"Young Hispanics" is not a protected class under the Fourteenth Amendment. Striking jurors who fall within this class, therefore, is not a violation of Batson. Accordingly, although the trial court was not explicit in this regard, when it struck the entire Batson application "right across the board," it may very well have done so because it implicitly recognized that defense counsel had failed to make out a prima facie case of discrimination based on strikes of young Hispanics.

By contrast, the trial court made it very clear that it was troubled by the defense's use of peremptory challenges to strike white jurors. (See V. at 509.) ("You're going to have to give me race-neutral reasons because I don't like what I'm seeing here.") Eventually resolving the issue in favor of the defense, the court, nevertheless, revealed that it still harbored doubts as to whether the race-neutral explanations offered by the defense were pretextual and stated that it considered this Batson ruling to be "a very tough call." (Id. at 529.) ("I was really leaning toward

31

granting the [prosecution's] application but... because it's so close and I still don't think that the People have made an adequate showing of pretext, I'm going to deny it.  But, I'm going to let you know it was very close.")  That the trial court did not express such reservations with respect to the striking of young Hispanics suggests that it was not nearly as troubled by this use of peremptory challenges and understood — rightly so — that a prima facie case of purposeful discrimination could not have been made for a class of prospective jurors comprising solely young Hispanics — as opposed to all Hispanics.

Finally, unlike Forte, who was white and was tried by a jury without any whites, here Petitioner was not tried by a jury that had no members of his ethnicity.  Indeed, the record indicates that there were, at least, five Hispanics on the jury — Cabeza, Cora, Deborja, Portu, and Raldon.  (See V. at 520-22, 526.)  As a result, Petitioner does not argue that the jury that actually heard the case was unrepresentative or that the "other procedural mechanisms in place did not adequately ensure that the jurors who were actually selected" were "'free from bias.'"  Morales, 273 F. Supp. 2d at 253 (quoting Allen v. Hardy, 478 U.S. 255, 259, 106 S. Ct. 2878, 2881 (1986)).  In fact, Petitioner has not asserted here — and did not do so on direct appeal — that his substantive equal protection rights under Batson were violated by permitting any of

32

the strikes exercised by the prosecution, or by the overall composition of the jury. Moreover, Petitioner has made no showing establishing that any member of the jury that heard his case was actually biased. See Morales, 273 F. Supp. 2d at 253. ("There is simply no cognizable claim under Strickland where the ineffectiveness concerns an alleged Batson violation but no indication of an unrepresentative, biased, or otherwise unfair jury.").

Given this, and in light of the trial courts's rejection of the defense's Batson motion "across the board," this Court cannot conclude that there exists a reasonable likelihood that the trial court would have found a Batson violation had Petitioner's attorney reminded the court that an explanation had not been given for the challenge to Medrano.

Accordingly, Petitioner has failed to satisfy the second prong of the Strickland test.  This Court, therefore, recommends that Petitioner's ineffective assistance of counsel claim with respect to the striking of Medrano as a juror be dismissed.

### 3. Juror Colon

Petitioner further contends that the Batson violation that would have been established had defense counsel articulated a sufficient basis to rebut the prosecutor's challenge with respect to juror Colon, was per se reversible error and satisfies the

33

prejudice prong of the <u>Strickland</u> test as a matter of law.  (<u>See</u> Pet'r Addendum at 4.)   This argument fails for at least two reasons.

First, Petitioner's argument that counsel failed to articulate a sufficient factual and legal basis demonstrating that the peremptory strike of juror Colon was pretextual fails for the very simple and straightforward reason that defense counsel <u>did</u>, in fact, articulate precisely just such an objection.  When called upon by the trial judge to justify her strike of prospective juror Colon, the prosecutor explained that she struck Colon because she was single, worked with handicapped children — which, in her view, made Colon sympathetic to the defense — and was not sufficiently rehabilitated after stating that her uncle's criminal history and drug addiction might influence her.  (<u>See</u> V. at 523.)  After the prosecutor provided her race-neutral explanation as to Colon, and the court asked defense counsel if he had any further arguments as to why the prosecutor's reasons were pretextual, Petitioner's attorney assailed the explanation, responding that the prosecutor's explanation concerning prospective juror Colon working with "Special Ed." was "ridiculous," and that he was entirely nonplused as to why the prosecutor would have ever sought fit to have raised the issue of Colon being "single" in the first place.  (<u>Id</u>. at 522-25.)

While Petitioner may have chosen to advance other arguments —
although he does not articulate what they would have been — after-
the-fact disagreement with his counsel's strategy does not suffice
to demonstrate professionally unreasonable conduct.   Moreover,
contrary to what Petitioner asserts, the fact that the trial court
accepted the prosecutor's explanations as race-neutral was not a
sign of ineffectiveness on the part of defense counsel.   A losing
tactic is not necessarily an ineffective one.   See Strickland, 466
U.S. at 689, 104 S. Ct. at 2065 ("Judicial scrutiny of counsel's
performance must be highly deferential[,]... and it is all too easy
for a court, examining counsel's defense after it has proved
unsuccessful, to conclude that a particular act or omission of
counsel was unreasonable.").   The defense did object and,
therefore, as a factual matter alone, it cannot be said that
defense counsel was ineffective in failing to object to the
prosecutor's explanation as to why the challenge to Colon was not
pretextual.

Second, even if it is assumed that defense counsel did not
actually articulate a sufficient basis for demonstrating that the
peremptory strike of prospective juror Colon was pretextual, there
is, in fact, no reasonable probability that had such an objection
been lodged, it would have been successful.   There are no grounds
upon which to second-guess the trial court's fact determination

35

that the prosecutor's peremptory challenge to prospective juror Colon was race-neutral, and, in particular, was <u>not</u> pretextual. Colon stated that her uncle's criminal history and drug addiction might influence her. (<u>See</u> V. at 342-43.)  When asked by the co-defendant's attorney, "Do you feel that whatever has happened, you know, with your uncle, and all these things, do you feel that affects you in any way for this case?," Colon replied, "I don't know.  I feel like it could, like I wouldn't want that to happen, but I feel like it's possible."  (V. at 344.)  In addition, when Petitioner's attorney asked her if she could give Petitioner a fair trial, Colon managed only weakly, "I think that I could."  (V. at 344.)

It was only after additional questioning by defense counsel, and in the strictly circumscribed context of whether or not she thought that she could give Petitioner a fair trial and presume innocence, that Colon did finally answer, "Yes."  (V. at 344-45.) This answer did not necessarily remove any question as to Colon's initial doubts as to her impartiality, however, and, with Colon's partiality reasonably in question, the prosecutor was, in turn, fully entitled to challenge her exactly as he did.

Because Petitioner's counsel did lodge an objection to the challenge to juror Colon, defense counsel acted professionally reasonable.  In any event, there is no reasonable probability that

36

the court would have accepted the challenge had defense counsel objected more rigorously — as Petitioner claims he did not.   For these reasons, Petitioner's ineffective assistance claim with respect to juror Colon is meritless and should be dismissed.

     4.   <u>Juror Deborja</u>

Petitioner also contends that defense counsel was ineffective in failing to move to strike juror Deborja, who was allegedly equivocal as to whether or not she would hold the State to its required burden of proof.  (<u>See</u> Pet'r Addendum at 2.)  According to Petitioner, Deborja's testimony during <u>voir dire</u> evinced a "state of mind... likely to preclude [her] from rendering an impartial verdict."   (Pet'r Reply Mem. at 4.)   We read the record differently.

Trial counsel is "accorded particular deference when conducting <u>voir dire</u>" and "[a]n attorney's actions during <u>voir dire</u> are considered to be matters of strategy."   <u>Hughes v. United States</u>, 258 F.3d 453, 457 (6th Cir. 2001); <u>accord</u> <u>Miller v. Webb</u>, 385 F.3d 666, 672 (6th Cir. 2004), <u>rehearing en banc denied</u>, (6th Cir. 2005).  "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."   <u>Hughes</u>, 258 F.3d at 457 (citation omitted); <u>accord</u> <u>Miller</u>, 385 F.3d at 672-73.

Similar deference is also accorded to the trial court's management of jury voir dire. See Hughes, 258 F.3d at 457. Once the proper questions have been asked of the jurors at voir dire, "the trial court, when impaneling a jury, 'has... broad discretion in its rulings on challenges therefor.'" United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997) (quoting Dennis v. United States, 339 U.S. 162, 168, 70 S. Ct. 519, 521 (1950)). This broad discretion exists, because a "finding of actual bias is 'based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.'" Id. (quoting Wainwright v. Witt, 469 U.S. 412, 428, 105 S. Ct. 844, 854 (1985)).

The broad discretion afforded to trial counsel and the trial court in conducting jury selection is, however, "subject to the essential demands of fairness," for a defendant's Sixth Amendment right to an impartial jury is at stake. Hughes, 258 F.3d at 457. Challenges for cause — the principal means by which this right is safeguarded — can be approved by a trial court only upon "a finding of actual or implied bias." Id. at 458-59. See also Murphy v. Florida, 421 U.S. 794, 800, 95 S. Ct. 2031, 2036 (1975). "Actual bias is 'bias-in-fact' — the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." Torres, 128 F.3d at 43 (citing United States v. Wood, 299 U.S. 123, 133, 57 S. Ct. 177, 179 (1936)). Bias can be

38

found where a prospective juror admits partiality, or where the same can be inferred from his or her answers to voir dire questions.  See Torres, 128 F.3d at 43.

Hence, in order to prevail on his claim that defense counsel was ineffective in failing to remove or challenge a biased juror during voir dire, Petitioner "must show that the juror was actually biased against him."  Hughes, 258 F.3d at 458; see also Patton v. Yount, 467 U.S. 1025, 1029-30, 1032, 104 S. Ct. 2885, 2887-89 (1984) (holding that ambiguous and contradictory testimony of three jurors was insufficient to overcome presumption of correctness owed to trial court's findings that the jurors would be impartial). Because Petitioner, here, cannot adduce any evidence from the voir dire record establishing that Juror Deborja was, in fact, actually biased against him, his claim that his attorney erred in failing to move to challenge her is, therefore, without merit.

In his reply brief, Petitioner relies heavily on the Sixth Circuit's decision in Hughes, quoting directly from the opinion at length.  (See Pet'r Reply Mem. at 5-6.)  This reliance is misplaced.  In Hughes, the juror at issue expressly stated, "I don't think I could be fair," in response to a direct question about her ability to be impartial, given that her nephew served on the police force and the case involved the robbery of a Deputy United States Marshal.  Hughes, 258 F.3d. at 456.  Remarkably,

39

defense counsel, in response, neither questioned the juror further nor attempted to remove her for cause or by peremptory strike.  See id.

The record in this case, by contrast, reveals no such express admission of bias.  Instead, juror Deborja was obviously initially confused by the questions asked of her by defense counsel.

> Mr. Horn:  And, again, I just ask you to be very careful at trial with any difference between assumption and proof. Finally, if you wait and see but if it turns out at the end of the entire case, if the D.A. fails to prove the charges beyond a reasonable doubt, all right, after you've heard everything what would your verdict be, Miss Deborja.
> If she fails to prove the charges beyond a reasonable doubt, what would your verdict be?
>
> Juror Deborja:  Guilty
>
> Mr. Horn:  If she don't [sic] prove the charges beyond a reasonable doubt, your verdict would be guilty?
>
> Juror Deborja:  Yes.

(V. at 283.)  It is not surprising that a layperson, unfamiliar with legal terms of art, might exhibit some modicum of initial confusion when asked to promise to hold the prosecution to its burden of proof, especially where the question as to the issue of proof is posed in the negative, as was the case here.

Moreover, in the present case, unlike in Hughes, defense counsel did take additional steps to make sure that Deborja understood; following the above-cited exchange, he presented her with several additional clarifying questions.  Thus, Deborja agreed

to the much more simply-worded proposition that a criminal defendant must be presumed innocent until proven guilty beyond a reasonable doubt. (<u>See</u> V. at 283-84.) Likewise, defense counsel instructed the prospective jurors at length — through the use of an extended baseball metaphor — on the requirement that the prosecution prove Petitioner's guilt with respect to each and every element of the alleged crime.

> Do you understand that they'll be a first base, a second, a third and a home, and if the prosecution fails to prove, in other words, if they've touched every base as a result of the testimony, even one base is missed, you have to find him not guilty.... Every base must be touched. So, beyond a reasonable doubt, that's that law.

(V. at 290.) Following this direction, counsel for Petitioner's co-defendant asked Deborja directly whether or not she understood — a question to which she clearly responded, "Yes." (<u>Id</u>.)

Since Deborja did not otherwise express any partiality towards the prosecution, it was not unreasonable for defense counsel not to have exercised a challenge to her presence on the jury. Counsel's decision falls squarely "within the realm of sound trial strategy." <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."). Moreover, in the absence of bias, Petitioner cannot satisfy the second prong of <u>Strickland</u>, because

41

there is no basis to conclude that, had Deborja <u>not</u> been seated as a juror, the result of Petitioner's trial would have been different. See <u>Mitchell v. Herbert</u>, No. 01 Civ. 681 (RJA) (VEB), 2008 WL 342975, at *20 (W.D.N.Y. Feb. 6, 2008) ("Without a finding that [the juror] was actually biased against Petitioner, prejudice under <u>Strickland</u> is not presumed.").

Because Petitioner, thus, fails to satisfy either prong of the <u>Strickland</u> test, Petitioner's claim of ineffective assistance of counsel with respect to juror Deborja is meritless and should be dismissed.

### 5. <u>Batson Protocol Claim</u>

Finally, Petitioner contends that counsel was ineffective in failing to request that the court comply with step three of the <u>Batson</u> protocol by explicitly articulating its factual findings. (<u>See</u> Pet'r Addendum at 6.)  Both the Appellate Division and this Court, however, have reviewed the underlying procedural <u>Batson</u> claim and have found it to be meritless. (<u>See</u> <u>infra</u> at 15-18.)  As previously discussed, the trial court is not required to articulate its factual findings in the manner that Petitioner contends, and, therefore, counsel's failure to request that the trial court do so cannot serve as a basis for a claim of ineffective assistance of counsel.  Since the underlying <u>Batson</u> claim is meritless, defense counsel cannot then be said to have rendered ineffective assistance

in failing to pursue it at trial.  See United States v. Franklyn,

157 F.3d 90, 97 (2d Cir. 1998) (holding that the requirements of

Strickland were not met where the Batson challenge was

"meritless"); Melenciano v. Walsh, No. 02 Civ. 9593 (HB), 2005 WL

768591, at *7-8 (S.D.N.Y. Apr. 6, 2005) (holding that "trial

counsel's failure to pursue a meritless Batson challenge cannot be

the foundation" for petitioner's ineffective assistance of counsel

claim)(citation omitted); United States v. Udogwu, No. 03 Civ. 422

(DC), 2003 WL 21344749, at *2-3 (S.D.N.Y. June 9, 2003) (finding no

ineffective assistance of counsel where counsel did not make a

Batson motion, because there was no basis for counsel to do so);

see also Morales v. Artuz, No. 98 Civ. 6558 (JGK), 2000 WL 1693563,

at *9-10 (S.D.N.Y. Nov. 13, 2000) (stating that the petitioner

could not show prejudice because the objection to the trial court's

Batson ruling was without merit).

Moreover, even if defense counsel had requested the trial

court to explicitly articulate its findings with respect to the its

credibility determinations, there is no reasonable probability that

the outcome of Petitioner's challenges at trial would have been

different.  The trial court made it very clear that it was

rejecting all of Petitioner's objections "across the board." (V.

at 525.)

For all of the aforementioned reasons, this Court recommends

43

that all of Petitioner's claims of ineffective assistance of counsel, including the claim with respect to step three of the <u>Batson</u> protocol, be dismissed.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Petition be dismissed with prejudice. Furthermore, because Petitioner has not made a substantial showing of a denial of a federal right, this Court recommends that no certificate of appealability be issued. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Lucidore</u>, 209 F.3d at 112. This Court further recommends certification, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's order would not be taken in good faith. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this report to file written objections. <u>See also</u> Fed. R. Civ. P. 6(a). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul G. Gardephe, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. Failure to file objections will result in a waiver

of those objections for purposes of appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully Submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: October 21, 2010
       New York, New York

Copies sent to:

Hector Figueroa
DIN # 02-A-2985
Green Haven Correctional Facility
Route 216
P.O. Box 4000
Stormville, New York 12582

Justin J. Braun, Esq.
Assistant District Attorney
Office of the Bronx County District Attorney
198 East 161st Street
Bronx, NY 10451