UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/15/13
```

HECTOR FIGUEROA,

                    Petitioner,

          v.

ROBERT ERCOLE,

                    Respondent.

**ORDER**

09 Civ. 7225 (PGG)(JCF)

PAUL G. GARDEPHE, U.S.D.J.:

          Hector Figueroa, proceeding pro se, filed a petition for a writ of habeas corpus.
(Dkt. No. 1)  On June 29, 2010, this Court referred the petition to Magistrate Judge Theodore H.
Katz for a Report and Recommendation ("R&R").  (Dkt. No. 23)  On October 21, 2010, Judge
Katz issued a 45-page R&R recommending that this Court deny the petition in its entirety.  (Dkt.
No. 24)  On February 21, 2011, after receiving several extensions from this Court, Figueroa filed
an objection to the R&R.  (Dkt. No. 31)  For the reasons stated below, this Court will adopt
Judge Katz's R&R in its entirety, and Figueroa's petition will be denied.

**BACKGROUND**

          Figueroa was charged with Criminal Possession of a Controlled Substance in the
First Degree, in violation of New York Penal Law § 220.21(1).  He was tried before a jury in
New York Supreme Court, Bronx County.  The evidence at trial can be summarized as follows:

          On October 8, 2000, at approximately 3:40 a.m., New York City Police Officers
John Polchinski and Kirsty Schmidt, who were riding in an unmarked police vehicle in the
Kingsbridge area of the Bronx, stopped a livery cab that was speeding and being driven
erratically.  (R&R at 4-5 (citing Trial Tr. 631, 668, 954-55))  Polchinski observed Figueroa, who

was seated in the back seat with another person, making kicking movements with his left foot. (R&R at 5 (citing Trial Tr. 636, 712, 754-55, 760, 783))  Polchinski opened the cab's back door and asked Figueroa and the other passenger, Jose Caba, to step out.  (R&R at 5 (citing Trial Tr. 634, 784, 810))  Meanwhile, Schmidt observed Figueroa putting his left leg on top of a plastic bag or kicking it at an angle.  (R&R at 6 (citing Trial Tr. 930, 947, 962, 996))  After Figueroa and Caba exited the vehicle, Polchinski and Schmidt entered the cab and observed an open shopping bag full of brick-shape objects wrapped in yellow paper.  (R&R at 6 (citing Trial Tr. 933, 946-47, 950-51, 972))  One of the brick-shaped objects sticking out of the bag was torn, revealing tiny glassine envelopes.  (R&R at 6 (citing Trial Tr. 933))  Figueroa and Caba were then placed under arrest.  (R&R at 6 (citing Trial Tr. 639, 795, 934))  The driver was released. (R&R at 6-7 (citing Trial Tr. 967, 969-70))

The bricks seized by the police contained 4,548 glassine envelopes, which in turn contained approximately six and three-eighths ounces of heroin.  (R&R at 7 (citing Trial Tr. 582-83, 591, 593-94, 613))  The jury heard testimony that the seized heroin was worth approximately $45,000, and that the number of glassines – and the fact that they were stamped "Drama," "Scarface," and "Rhumba" – strongly suggested future retail distribution.  (R&R at 7 (citing Trial Tr. 839-41))  A police officer also testified that narcotics couriers sometimes use livery cabs to deliver drugs in order to avoid vehicle forfeiture in the event that they are stopped by the police.  (R&R at 7 (citing Trial Tr. 831-33))

The defense theory at trial was that the livery cab driver was using his own cab to transport narcotics.  (R&R at 7-8)  The People argued that the driver would have taken care not to drive erratically – and would not have picked up a fare – if he was transporting narcotics. (R&R at 8 (quoting Trial Tr. 1189, 1200))

2

The jury convicted Figueroa of Criminal Possession of a Controlled Substance in the First Degree, and he was sentenced to an indeterminate term of from twenty-three years to life imprisonment.

On November 22, 2005, the Appellate Division, First Department, affirmed Figueroa's conviction, rejecting his ineffectiveness of counsel claim on the merits. People v. Figueroa, 23 A.D.3d 291, 293 (1st Dept. 2005)  On December 8, 2005, the Court of Appeals denied leave to appeal. People v. Figueroa, 6 N.Y.3d 753 (2005)

Figueroa is currently serving his sentence at Green Haven Correctional Facility. (R&R at 1)

## FIGUEROA'S HABEAS PETITION

On August 17, 2009, Figueroa, proceeding pro se, filed a petition for a writ of habeas corpus that presents two grounds for relief:  (1) ineffective assistance of trial counsel in conducting voir dire; and (2) violations of Batson v. Kentucky, 476 U.S. 79 (1986) during jury selection.  (R&R at 10)[1]

On June 29, 2010, this Court referred Figueroa's petition to Magistrate Judge Katz for an R&R.  (Dkt. No. 23)  On October 21, 2010, Judge Katz issued a 45-page R&R recommending that this Court deny the petition in its entirety.  (Dkt. No. 24)

On February 21, 2011, Figueroa submitted an objection to the portion of Judge Katz's R&R that addresses Figueroa's ineffective assistance of counsel claim.  (Dkt. No. 31) Figueroa continues to assert that he is entitled to habeas relief "based on (1) [his] trial attorney's failure to demand that the prosecution articulate a race neutral explanation for a juror it

---

[1]  Respondent concedes that the Petition is timely and that Figueroa has exhausted his state court remedies with respect to his Batson and ineffective assistance of counsel claims.  (R&R at 10 (citing Resp't Mem. at 3))

peremptorily challenged, and (2) [his] trial attorney's failure to move to strike a biased juror."
(Pet. Obj. at 1)[2]

## DISCUSSION

## I.     STANDARD OF REVIEW

In evaluating a Magistrate Judge's R&R, a district court may "accept, reject, or
modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28
U.S.C. § 636(b)(1). When a timely objection has been made to the Magistrate Judge's
recommendations, "[the district court judge] shall make a de novo determination of those
portions of the report or specified proposed findings or recommendations to which objection is
made." 28 U.S.C. § 636(b)(1); Razo v. Astrue, No. 04 Civ. 1348(PAC)(DF), 2008 WL 2971670,
at *3 (S.D.N.Y. July 31, 2008) (citing Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y.
1991)). However, "the phrase de novo determination in section 636(b)(1), as opposed to de novo
hearing, was selected by Congress 'to permit whatever reliance a district judge, in the exercise of
sound judicial discretion, cho[oses] to place on a magistrate's proposed findings and
recommendations.'" Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) (quoting United States v.
Raddatz, 447 U.S. 667, 676 (1980) (emphasis in original)). A federal court "may grant a writ of
habeas corpus only if the state court's adjudication 'was contrary to, or involved an unreasonable
application of, clearly established Federal law. . . .'" Dolphy v. Mantello, 552 F.3d 236, 238 (2d
Cir. 2009) (quoting 28 U.S.C. § 2254(d)).

---

[2] "Pet. Obj." refers to Figueroa's objections to Judge Katz's R&R dated February 21, 2011.

## II.    ALLEGED INEFFECTIVE ASSISTANCE DURING VOIR DIRE

Following the third round of jury selection, and after the prosecutor raised a

Batson challenge to defense counsel's exercise of peremptory challenges against white jurors,

defense counsel raised a Batson challenge based on the prosecution's peremptory strikes of

several Hispanic jurors, alleging that the prosecutor "knocked out every young Hispanic starting

with Mr. [Pablo] Medrano, Mr. Heddie Rodriguez, Miss [Nelliette] Colon now."[3]  (R&R at 2

(citing Transcript of Apr. 3-10, 2002 Voir Dire ("V.") at 520))  In response to defense counsel's

Batson challenge, the trial judge required the prosecutor to explain the basis for her strikes.

(R&R at 3 (citing V. at 521))  The prosecutor explained her challenges concerning four members

of the venire, but provided no explanation concerning Medrano, Rodriguez, or Colon.  (R&R at 3

(citing V. at 521-23))  That omission was not brought to the court's attention.  (R&R at 3)

The trial judge went on to deny defense counsel's Batson claim in its entirety,

stating that Figueroa's "whole Batson application is denied, right across the board." (V. at 525)

The court did not, however, explicitly articulate its factual findings with respect to any of

Figueroa's Batson challenges.  (R&R at 3)  Figueroa made no record of the ethnic makeup of the

jury that was chosen, but argues that his rights under Batson were violated.  (R&R at 3)

Figueroa also argues that his trial counsel provided ineffective assistance in failing

to move to strike venire member Maria Deborja based on bias.  During voir dire, Figueroa's co-

defendant questioned Deborja as to whether she would be able to hold the prosecution to its

burden of proof.  Deborja initially responded affirmatively when asked if she could follow the

court's instructions on holding the prosecution to its burden.  (R&R at 4 (citing V. at 270))  Later

---

[3]  Batson v. Kentucky, 476 U.S. 79 (1986) prohibits the exercise of peremptory challenges in a
manner that violates the Equal Protection Clause, including by excluding jurors on the basis of
race. Id. at 96-97.

in the voir dire, however, when questioned as to how she would decide the case if the
prosecution failed to prove Figueroa guilty beyond a reasonable doubt, Deborja responded that
she would find Figueroa "guilty." (R&R at 4 (quoting V. at 283)) When questioned a second
time, Deborja again indicated that she would find Figueroa guilty. (R&R at 4 (citing V. at 283))
After asking the same question of two other prospective jurors, who both responded "not guilty,"
counsel for Figueroa's co-defendant again asked Deborja whether she understood that the
prosecution "has the burden to prove the charges beyond a reasonable doubt," and if the
prosecution fails to meet its burden, Figueroa is to be "presumed innocent." (R&R at 4 (quoting
V. at 283-84)) Deborja answered "Yes." (R&R at 4 (quoting V. at 283-84)) Defense counsel
did not challenge Deborja and she was selected for the jury.

A.   **Handling of Batson Challenge**

In his objection, Figueroa argues that his lawyer provided ineffective assistance in
failing to demand that the prosecutor articulate a race-neutral explanation for striking a Hispanic
member of the venire. (Pet. Obj. at 1-2) Figueroa identifies the venire-member in question as
Heddie Rodriguez, but he cites to the portion of the R&R discussing venire-member Medrano.
(Id. at 2 (citing R&R at 23-33)) This Court will address all three Hispanic members of the venire
for whom the prosecutor was not required to provide a race-neutral explanation:  Rodriguez,
Medrano, and Colon.

In considering Figueroa's ineffective assistance claims, Judge Katz correctly
applied the two-prong test set forth by the Supreme Court in Strickland v. Washington, 466 U.S.
668 (1984). Strickland requires Figueroa to first establish that his attorney's performance was so
deficient that it "fell below an objective standard of reasonableness." 466 U.S. at 688. Second,
Figueroa must demonstrate that there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694.  As

discussed below, Judge Katz correctly determined that Figueroa has not met his burden as to

either prong of the Strickland test.

### 1.   Rodriguez

Figueroa argues that "[i]t made no sense for counsel to cite Rodriguez as one of

the jurors the State improperly struck, and then fail to demand that the State justify that strike."

(Pet. Obj. at 2)  However, as Judge Katz pointed out, "[t]he record indicates that Rodriguez was

relieved of his duty to serve as a juror, not as a result of a peremptory strike by the prosecution,

but rather for cause."  (R&R at 22)  During voir dire, Rodriguez reported that he had had an

unpleasant encounter with the police; as a result, he stated, "I don't have any likings towards any

of the cops or systems.  I don't care what any cops have to say against these gentlemen here."

(R&R at 22-23 (quoting V. 366))  In response to a question from counsel for Figueroa's co-

defendant as to whether Rodriguez could be impartial, he replied, "I can't take any cop's word

for anything.  I have no trust in the system at all."  (R&R at 23 (quoting V. 366))  The court

subsequently excused Rodriguez for cause, and no party objected.  (R&R at 23 (citing V. 367))

Because Rodriguez was dismissed for cause, the prosecution did not exercise a

peremptory strike against him, and thus, there was no Batson claim for defense counsel to

pursue.  See Anderson v. Woods, No. 07 Civ. 2180(NRB), 2008 WL 2440226 , at *5 (S.D.N.Y.

June 12, 2008) ("Batson and its progeny provide redress for the discriminatory use of

peremptory strikes and we know of no precedent extending Batson to challenges for cause.");

accord United States v. Elliott, 89 F.3d 1360, 1364-65 (8th Cir. 1996) ("Batson applies only to

peremptory strikes.  We know of no case that has extrapolated the Batson framework to for-

cause strikes."); United States v. Blackman, 66 F.3d 1572, 1575 n. 3 (11th Cir. 1995) ("[N]o

authority suggests <u>Batson</u> extends to the area of challenges for cause."); <u>United States v.</u>

<u>Bergodere</u>, 40 F.3d 512, 515-16 (1st Cir. 1994) (noting that in order for a defendant to pursue a

<u>Batson</u> claim, "the defendant must show that the challenge was peremptory rather than for

cause"). Given that no peremptory challenge was exercised against Rodriguez, there is no basis

for finding that Figueroa's lawyer was constitutionally ineffective in failing to press a <u>Batson</u>

challenge relating to Rodriguez.

> **2.    Medrano**

Unlike with Rodriguez, the prosecution did in fact use one of its peremptory

challenges to strike Medrano. (V. at 208)  The prosecutor was not asked to provide an

explanation for her strike of Medrano, and defense counsel did not point out the omission.

In considering whether defense counsel's performance in this regard was

constitutionally ineffective, Judge Katz pointed out that "[d]efense counsel's failure to pursue his

<u>Batson</u> challenge with respect to Medrano, . . . may have been based on a realistic assessment

that it would not succeed; indeed, there is little doubt that, had an objection been lodged, the

prosecutor would have proffered a race-neutral explanation for why she struck Medrano." (R&R

at 24)

Judge Katz noted that Medrano had stated that his brother had been convicted of

possession of a firearm and was still on parole at the time of the trial, facts that could have

influenced his impartiality. (R&R at 24-25 (citing V. at 116-17))  Medrano also stated that he

was employed at an auto parts store. This was significant, because an important factual issue at

the trial was whether the space between the driver's seat and the floor of the livery cab was large

enough for the seized contraband to have been passed through. (R&R at 25 (citing V. at 142))

Given Medrano's work at an auto parts store, there was a risk that he would draw on his own experience rather than rely solely on the evidence presented at trial.

Because there were ample race-neutral explanations available to the prosecutor, this Court agrees with Judge Katz's conclusion that defense counsel's failure to press his Batson challenge with respect to Medrano could easily have represented a realistic assessment that the objection would not succeed. Accordingly, Figueroa has not established that his trial counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Judge Katz also correctly found that Figueroa has not established that he was prejudiced by his counsel's failure to demand that the prosecution give a race-neutral explanation for striking Medrano. As discussed, there were ample race-neutral explanations for striking Medrano. Moreover, as Judge Katz noted, Figueroa makes no claim that the jury selected in his case was unrepresentative or biased. Indeed, the record indicates that at least five Hispanics sat on the jury that convicted Figueroa. (R&R at 32); see Morales v. Greiner, 273 F. Supp. 2d 236, 253 (E.D.N.Y. 2003) ("There is simply no cognizable claim under Strickland where the ineffectiveness concerns an alleged Batson violation but no indication of an unrepresentative, biased, or otherwise unfair jury.").

Under these circumstances – including "the trial court['s] rejection of the defense counsel's Batson motion 'across the board' [ – ] this Court cannot conclude that there exists a reasonable likelihood that the trial court would have found a Batson violation had [Figueroa's] attorney reminded the court that an explanation had not been given for the challenge to Medrano." (R&R at 33)

Figueroa has not demonstrated that his lawyer was constitutionally ineffective in connection with Medrano.

9

3.    **Juror Colon**

In his petition, Figueroa claims that his lawyer was ineffective in failing to rebut the prosecutor's proffered race-neutral explanation for her peremptory challenge against venire-member Colon. Figueroa does not address this point in his objections to the R&R. While he states that he is incorporating into his objections his Reply Memorandum of Law in support of his habeas petition (Pet. Obj. at 3), that purported objection lacks specificity and is not specifically directed at any findings of fact or conclusions of law in the R&R. Accordingly, this Court will review this portion of Judge Katz's R&R for clear error. See Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241(RMB)(FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) ("'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'") (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).

Figueroa's claim regarding Colon fails for several reasons. First, Figueroa's counsel did, in fact, articulate a specific objection to the prosecutor's proffered race-neutral explanation for striking Colon. (See R&R at 24 (citing V. at 522-25)) When challenged to explain her strike of Colon, the prosecutor mentioned, inter alia, the fact that Colon had stated that her uncle's criminal history and drug addiction might influence her. (R&R at 34 (citing V. at 523); see also V. at 342-43)) Figueroa's counsel assailed the prosecutor's explanation, arguing that it was "ridiculous." Id. (citing V. at 522-25) The court nonetheless accepted the prosecutor's explanation. Neither the fact that Figueroa might have preferred his counsel to make other arguments, nor the fact that the trial judge accepted the prosecutor's explanation as race-neutral, demonstrates that Figueroa's counsel was ineffective. (See R&R at 35 (noting that

"[a] losing tactic is not necessarily an ineffective one") (citing <u>Strickland</u>, 466 U.S. at 689)) In sum, Figueroa has not demonstrated that his lawyer was constitutionally ineffective in connection with Colon.

**B.     Failure to Object to Deborja**

Figueroa argues that his lawyer was ineffective in failing to object to Maria Deborja, who was selected for the jury.[4] (Pet. Obj. at 2) Figueroa argues that Deborja was biased because she stated, during <u>voir dire</u>, that she "would find [Figueroa] guilty even if the State failed to prove [his] guilt beyond a reasonable doubt." (Pet. Obj. at 2) He also argues that Deborja's later statement that she understood that the prosecution "has the burden to prove the charges beyond a reasonable doubt" and that if the prosecution did not do so, Figueroa would be "presumed innocent" (V. at 283-84), does not mean that she was unbiased, because "the issue was whether she would hold the State to [the beyond a reasonable doubt] standard not whether she understood the concept." (Pet. Obj. at 2)

Judge Katz correctly determined that Deborja was "obviously initially confused" when she was first questioned about burden of proof. (R&R at 40) Mr. Horn, a lawyer for Figueroa's co-defendant, asked Deborja the following questions:

> Mr. Horn: And, again, I just ask you to be very careful at trial with any difference between assumption and proof. Finally, if you wait and see but if turns out at the end of the entire case, if the D.A. fails to prove the charges beyond a reasonable doubt, all right, after you've heard everything what would your verdict be, Miss Deborja. If she fails to prove the charges beyond a reasonable doubt, what would your verdict be?
>
> [Deborja]: Guilty

---

[4] While Figueroa cites to the portion of the R&R that discusses venire-member Colon rather than Deborja (Pet. Obj. at 2), it is clear from context that Figueroa is referring to Deborja, because Figueroa discusses the questions Deborja was asked during <u>voir dire</u>.

> Mr. Horn:  If she don't prove the charges beyond a reasonable doubt, your verdict would be guilty?
>
> [Deborja]:  Yes.

(V. at 283)  As Judge Katz explained, "It is not surprising that a layperson, unfamiliar with legal terms of art, might exhibit some modicum of initial confusion when asked to promise to hold the prosecution to its burden of proof, especially where the question as to the issue of proof is posed in the negative, as was the case here."  (R&R at 40)

In later questioning, Deborja expressed an understanding that if the prosecutor did not demonstrate Figueroa's guilt beyond a reasonable doubt, she would be required to find Figueroa not guilty.  Mr. Horn asked Deborja:

> Mr. Horn:  Do you understand that [the prosecutor] has the burden to prove the charges beyond a reasonable doubt, so I'm asking you what if she doesn't prove the charges beyond a reasonable doubt.  He's presumed innocent, my client, right, do you agree.
>
> [Deborja]:  Yes.[5]

(V. at 284)  In addition, Figueroa's trial counsel, Mr. Colon, extensively questioned the jurors – using a baseball metaphor – concerning the requirement that the prosecutor must prove Figueroa's guilt with respect to each and every element of the alleged crime beyond a reasonable doubt:

> Mr. Colon: . . . Do you understand that they'll be a first base, a second, a third and a home, and if the prosecution fails to prove, in other words, if they've touched every base as a result of the testimony, even one base is missed, you have to find [Figueroa] not guilty. . . . Every base must be touched.  So, beyond a reasonable doubt, that's the law.

(V. at 288-90)  Mr. Horn asked Deborja directly whether she understood, and she responded "Yes."  (V. at 290)

---

[5]  While the voir dire transcript does not indicate which juror answered this question, the parties represent that it was Deborja.  (See R&R at 41; Pet. Obj. at 2)

Contrary to Figueroa's claim (Pet. Obj. at 2), Deborja's assurances went beyond mere agreement with the concept of reasonable doubt – she specifically agreed with Figueroa's lawyer's statement that "if the prosecution fails to prove, in other words, if they've touched every base as a result of the testimony, even one base is missed, you have to find [Figueroa] not guilty." (V. at 290 (emphasis added))   Given the assurances that Figueroa's lawyer received from Deborja, it was reasonable for defense counsel not to have challenged her.  This is a decision that falls squarely "within the realm of sound trial strategy." Strickland, 466 U.S. at 690; see Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001) ("Counsel is . . . accorded particular deference when conducting voir dire.  An attorney's actions during voir dire are considered to be matters of trial strategy."); accord Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997) ("An attorney's actions during voir dire are considered to be matters of trial strategy"); Mitchell v. Herbert, No. 01 Civ. 681, 2008 WL 342975, at *17 (W.D.N.Y. Feb. 6, 2008).

Figueroa has not established that his attorney's performance was deficient with respect to Deborja.

### III.   BATSON CLAIM

In his petition, Figueroa claims that the trial court violated Batson by failing to explicitly articulate its factual findings when denying his lawyer's Batson challenge.  Because Figueroa did not specifically object to this portion of the R&R, this Court will review it for clear error.  See Gilmore, 2011 WL 611826, at *1.

Judge Katz correctly determined that Batson does not require a trial judge to articulate detailed factual findings when ruling on a Batson challenge.  (R&R at 15); see Miller-El v. Cockrell, 537 U.S. 322, 347 (2003) (holding that a "state court need not make detailed

findings addressing all the evidence before it" when ruling on a <u>Batson</u> challenge); <u>McKinney v.</u>
<u>Artuz</u>, 326 F.3d 87, 100 (2d Cir. 2003) ("Although reviewing courts might have preferred the
trial court to provide express reasons for each credibility determination [it made in response to a
<u>Batson</u> challenge], no clearly established federal law required the trial court to do so."); <u>Galarza</u>
<u>v. Keane</u>, 252 F.3d 630, 640 n. 10 (2d Cir. 2001) (holding that a trial court is not required to state
"a talismanic recitation of specific words in order to satisfy <u>Batson</u>" and that a clear rejection of
each <u>Batson</u> claim is sufficient).

   Here, the trial court stated that Figueroa's "whole <u>Batson</u> application is denied
right across the board," after giving defense counsel a sufficient opportunity to make a record.
(V. at 525)  This Court finds no clear error in Judge Katz's determination that this satisfied the
trial court's <u>Batson</u> obligation.  (R&R at 18)

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

   The Court adopts the findings and conclusions set forth in Judge Katz's Report
and Recommendation in their entirety.  Figueroa's petition for a writ of habeas corpus (Dkt. No.
1) is DENIED.

   This Court declines to issue a certificate of appealability pursuant to 28 U.S.C.
§ 2253(c)(1)(A), because Figueroa has not "made a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2).  This Court further finds that any appeal from this
order would not be taken in good faith.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 445-46
(1962)

   The Clerk of the Court is directed to close this case and to mail a copy of this
order via certified mail to Hector Figueroa (<u>pro se</u>), DIN # 02-A-2985, Green Haven

Correctional Facility, Route 216, P.O. Box 4000, Stormville, NY 12582

Dated: New York, New York
      July 15, 2013

                    SO ORDERED.

                    _____

                    Paul G. Gardephe
                    United States District Judge